IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN E. DOWLING | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENSION Plan FOR SALARIED | : | NO. 14-CV-3926 |
| EMPLOYEES OF UNION PACIFIC, et al. | : | |

OPINION AND ORDER

Ditter, J.                                                                                              March 23, 2016

In this declaratory action filed under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), the plaintiff alleges that provisions of benefit plans sponsored by his former employer have been misinterpreted and therefore he is entitled to a larger pension than he is now receiving.

The parties agree that his pension should be based upon the number of years during which he was considered to be employed and his compensation during an appropriate portion of that time. They disagree on whether incentive pay awards should or should not be included as part of that compensation. Before me are the parties cross-motions for summary judgment. For the reasons that follow, I shall deny the plaintiff's motion and grant the defendants' motion.

I. Factual background[1]

Plaintiff, John E. Dowling, began working for Union Pacific Corporation in 1988.

---

[1] The facts are from the parties' joint stipulation of fact unless otherwise noted.

In July of 1995, while a salaried employee, Dowling was diagnosed with multiple sclerosis. He began receiving short term disability benefits on August 1, 1996. On February 1, 1997, Dowling began receiving benefits under Union Pacific's long term disability plan ("the LTD plan") for which he had previously paid.

Dowling never returned to work at Union Pacific. He continued receiving LTD benefits of $30,000 per month through September 30, 2012. Effective October 1, 2012, having reached the age of 65, he began receiving a pension under the provisions of an existing Union Pacific Retirement Plan.[2]

After his diagnosis but before receiving disability payments, Dowling asked for and received estimates of his pension benefits from the plan administrator. Ultimately, he received several that were diverse.

A November 1995 response provided two calculations; one if he terminated his employment then, and one if he went on LTD until age 65 and then retired. Under this second option, the estimate assumed that he would continue to accrue service until his retirement date and that his final average earnings calculation would be based on his highest three years of compensation prior to December 31, 1996, including base pay, $208,000, plus incentive and merit pay. *See Plt's Mot. for Summ. Judg.* Exh. C.

A month later, this estimate was updated by the administrator to include an

---

[2] For the purposes of this opinion, I am ignoring the fact that Union Pacific had two plans – only one is important here. In addition, I am also ignoring he fact that certain U.S. Treasury Regulations are applicable. Again, they do not affect the final outcome.

incentive pay award for 1995 using the same assumptions. Dowling's Final Average Compensation was calculated to be $365,848, and his projected retirement benefit was $143,400 per year.[3] *Id.*, Exh. D. Dowling was provided with a copy of this estimate. However, in March of 1996, again before he applied for disability benefits, Dowling received a different estimate based on a Final Average Compensation figure of $208,000,[4] which resulted in a pension of $78,007.44 per year.[5] *Jt. Stip. of Facts,* ¶ 54. According to Dowling, he inquired about the difference in the pension calculations but he did not receive any additional information at that time. *Plt's Mot. for Summ. Judg*, Dowling Aff. ¶ 5. This was only one of the calculations made by the defendants and the one that resulted in the lowest payment to Dowling. *Id.,* Exh. F.[6] This same calculated benefit was provided to Dowling in 2010,[7] and in 2012, when he was eligible to retire.

In 2012, Dowling submitted an application for retirement benefits in anticipation of reaching retirement age that year. At that time, the plan administrator calculated the total pension that would be payable to Dowling using two components; Dowling's years of service and his highest average salary during a designated period of that time.

---

[3] Approximately 40 percent of the then-calculated compensation.

[4] Obviously only his base pay – no merit or incentives.

[5] Approximately 38 percent of his base pay.

[6] Dowling did not know of the multiple calculations until he received this document in connection with this lawsuit.

[7] Dowling does not contend he questioned to this calculation in 2010.

Dowling's credited years of service included the time he was on LTD. His final average compensation was determined by using his base rate, $208,000 when he last worked. This was deemed to be his salary while he was disabled. The administrator then took the average of Dowling's deemed compensation rate for the 36 consecutive months of highest compensation during the 120-month period immediately preceding the date on which he retired, to arrive at a final average compensation of $208,000 per year.

When Dowling sought an explanation for his pension calculation, he was provided with an internal memorandum, dated February 22, 1996, explaining that the original estimate "mistakenly assumed that the [final average compensation] for disability would be calculated on the highest pay just prior to being placed on LTD. This resulted in a much higher pension benefit since it included [incentive and merit] awards." *Id.,* Exh G. Consistent with the method for the calculation of benefits set forth in this memorandum, Dowling has received a pension of $78,007.44 per year since October 2012.

On October 11, 2012, Dowling submitted a claim for additional benefits. His claim was denied on January 3, 2013. Dowling filed a timely administrative appeal and his appeal was denied on April 30, 2013.

    2. <u>Standard of Review</u>

Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Where a pension plan grants discretionary authority to a plan administrator to determine and interpret the terms of the plan, the Court must review the administrator's determination under a deferential abuse of discretion standard. *Funk v. Cigna Group, Ins.*, 648 F.3d 182, 191 (3d Cir. 2011). Under this standard, I may not reverse the administrator's decision to deny benefits unless that decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fleisher v. Standard Ins. Co.,* 679 F.3d 116, 121 (3d Cir. 2012). Thus, my analysis concerns not whether the application of the plan is reasonable, but whether it is unreasonable. *Id.* at 127.

3. Discussion

The parties do not dispute that the plan administrator in this case was granted the discretion and authority to determine eligibility and interpret the plan terms. The parties also agree that the terms of the plan are unambiguous. The disagreement lies in the method used to calculate Dowling's Final Average Compensation, as defined by the plan, and whether it was a reasonable application of the plan.

The administrator based his calculation on "deemed compensation"[8] earned in the 120-month period during which Dowling was on LTD. Dowling contends the final average compensation should have been calculated on his actual compensation during the

---

[8] Since Dowling was on LTD, he was not paid as he would have been as an active Union Pacific employee. For the calculation of his pension, it was assumed, i.e., deemed, that he was still on salary in order to credit him with additional years of employment.

5

120-month period immediately preceding his disability, even though his time on LTD was added to his years of credited service. If the administrator's method is upheld, the parties agree that Dowling's payment is correct.

The plan administrator has described his application of the plan as follows.

To determine an individual's retirement benefit under the plan, the administrator is tasked with calculating his final average compensation and his years of credited service. *See* SOF, App. Ex. 1 at § 5.01(a). "Credited Service" is equal to the time the individual spends as a "Covered Employee"[9] of Union Pacific. *Id*. at § 4.02(a)(1). The plan provides that the "Final Average Compensation shall mean the average of the Participant's monthly Compensation for the 36 consecutive calendar months of highest Compensation within the 120-calendar month period immediately preceding . . . the last date on which he is a Covered Employee . . .". *Id.* at § 2.35.

The plan also provides that a participant who is totally disabled has had a separation from service for purposes of the plan. *Id.* at § 2.67. A participant who is no longer working because he is totally disabled may elect to commence his benefit immediately, if otherwise eligible to do so under applicable federal regulations. If the participant makes this election, his pension is calculated based on his compensation and years of service immediately preceding his disability. If the participant does not opt for retirement or is not eligible to immediately commence his benefit (i.e., is not at least 55

---

[9] One who is a regular, salaried employee, or for benefit purposes, is assumed to have been.

6

years old), the plan permits a disabled participant to continue to accrue credited years of service and his compensation will be deemed to have continued during the time he remains a disabled participant.  Three Plan provisions are applicable in this circumstance.

First, § 6.05 describes events that establish the date when one who has been a disabled participant is no longer a disabled participant.  An individual is no longer a disabled participant when he ceases to receive benefits under an LTD plan or elects a Benefit Payment Date.  When one is no longer a disabled participant, he is entitled to a pension under the plan "applied as if his Separation from Service occurred on the date he ceases to be a Disabled Participant."  *See* SOF, App. Ex. 1 at § 6.05.  This section also provides that the participant continues to be credited with years of service as long as he remains a disabled participant, in effect, delaying his separation from service date until he is both eligible for and elects to begin his retirement benefits.  *Id.*  Here, Dowling was not longer a disabled participant as of October 2012, when he turned 65 and was eligible to receive retirement benefits.

Next, § 4.02 provides that a "Disabled Participant who is a Covered Employee on his Disability Date shall be credited with years of Credited Service as if he were a Covered Employee from his Disability Date to the date on which he ceases to be a Disabled Participant."  *Id.* at § 4.02(c)(2).  Dowling received credit for 15 years and 8 months service during his period of disability.  This time was added to the time he worked prior to his disability for a total of 24.25 years of credited service.

Finally, the plan provides that a disabled participant is deemed to have received compensation during his period of total disability equal to his base pay rate in effect when his total disability began. *Id.* at § 2.18(a)(3)(C). The administrator determined that Dowling's deemed compensation was $208,000 per year/$17,333.33 per month.

Applying the plan in the manner described above, the administrator calculated Dowling's benefits as follows:

- § 6.05 – as a disabled participant, Dowling was entitled to a pension as if his separation from service occurred on September 30, 2012 – the date he reached 65 and ceased being a disabled participant;

- § 4.02(c)(2) – during the time he was a disabled participant, Dowling was credited with years of service as if he were a covered employee from February 1, 1997, that is the date he became totally disabled, through September 30, 2012, the date he ceased being a disabled participant;

- § 2.18(a)(3)(C) – during this 15-plus year period of credited service, Dowling was "deemed" to have received compensation at his base pay rate on February 1, 1997;

- § 2.35 – his final compensation, $208,000, was based on the average of his monthly compensation for the 36 months of highest compensation within the 120 calendar month period immediately preceding September 30, 2012.

Based on these factors, the administrator determined Dowling was entitled to a monthly benefit of $6,500.62, and Dowling has been paid this amount from October, 2012 through the present.

Dowling contends the plain language of the plan requires the Final Average Compensation to be calculated from the date he was last a covered employee and that does not cover the period he was a disabled participant. Because it is agreed that

8

Dowling was last a covered employee on February 1, 1997, he contends the calculation of his Final Average Compensation must be based on the period immediately preceding February 1, 1997.[10] He asserts that there is nothing in the plan that would permit the term Covered Employee to make an exception for a disabled employee that would extend the date to the last date he is a disabled employee, as was done in this case.

Dowling points to his benefit determination letters as support for his position that he ceased to be a Covered Employee on February 1, 1997. In a letter dated January 3, 2013, the administrator wrote that "Mr. Dowling ceased to be a Covered Employee when he incurred a Separation from Service (for purposes of the Pension Plan) as a result of his Total Disability." *Jt. Statement.*, Exh. C, at 2. Thus, Dowling contends that the plain language of the plan requires his pension be based on his pre-disability earnings, and that the administrator has erroneously invoked his discretion "in order to discern the meaning of Final Average Compensation in the context of the Pension Plan's special provision for Disabled Participants," despite the clear and unambiguous language of the plan. *Id.*, Exh. E, at 5, ¶3. However, this assertion discounts the applicability of § 2.18(a)(3)(C) with regard to deeming compensation.

Dowling contends § 2.18(a)(3)(C) makes no mention of disabled participants and thus does not apply to disabled participants. While it is true that Subsection (C) does not specifically mention disabled participants, Subsection (3) states that Subsection (C) is

---

[10] Over this earlier period, Dowling's highest total compensation was $30,000.00 per month.

applicable to a disabled participant who ceases to be such after January 1, 1999, and thereafter, its refers only to employees – the broadest, and presumably all-inclusive category of individuals covered by the plan.  Further, Subsections (A) and (B) have no applicability to a disabled participant, leaving only Subsection (C), with its reference to a period of absence that could apply to a disabled participant.

Taking into account the various sections, subsections, definitions, ans exceptions, this is what it comes down to:

For plan participants, there is a general rule that years of service end when employment ends.  A participant's pension is based upon pay received during the ten years that end when employment ends.

However, so far as disabled participants are concerned, applicable sections of the plan create an exception to the general rule.  For disabled participants, employment ends when they are no longer a disabled participant and a pension is based upon their deemed pay during the prior ten years.

Dowling contends he is covered by the general rule.  Not so, says the plan: he is covered by the exception.  He ceased to be employed when he retired and became a pensioner in 2012.  While he was a disabled participant, he was deemed to have been paid his base salary of $208,000 for each of the ten years prior to 2012 and his pension is based upon that salary.  The clear language of the plan provides for deemed compensation for disabled employees who receive credited service, and the administrator's decision in

Dowling's case is consistent with the plain and unambiguous terms of the plan.[11]

    4. Conclusion

After consideration of the arguments of counsel and reviewing the plan, I find that the relevant terms are plain and unambiguous.[12] I find further that the administrator's determination of benefits under the plan is appropriate and reasonable, and does not controvert the plain language of the document. Therefore, I shall grant the defendants' motion for summary judgment and deny the plaintiff's motion for summary judgment.

    An order follows.

---

[11] I find Dowling's argument that the original calculation was based on income immediately preceding his disability is not persuasive on the issues before me. First, at that time it was not evident that Dowling would opt to go on long term disability or for how long. Moreover, shortly thereafter, the administrator advised Dowling of his calculation error and that method of calculation has remained consistent through today, and it is consistent with the calculation of other disabled Union Pacific employees.

[12] Even if I were to conclude that the language of the Plan was ambiguous, I would find that the administrator's interpretations of the terms for determining the final average compensation of its disabled participants were entitled to deference. *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442-44 (3d Cir. 2001).